**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ISHMEAL FRAZER,

                              Plaintiff,

       v.                                              5:16-CV-1324
                                                       (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

LAW OFFICES OF STEVEN R. DOLSON              STEVEN R. DOLSON, ESQ.
126 North Salina Street, Suite 3B
Syracuse, New York 13202
Counsel for Plaintiff

U.S. SOCIAL SECURITY ADMIN.                   HASEEB FATMI, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
26 Federal Plaza, Room 3904
New York, New York 10278
Counsel for Defendant

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

**MEMORANDUM- DECISION AND ORDER**

       Currently before the Court, in this Social Security action filed by plaintiff Ishmeal[1]

Frazer against the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's

motion for judgment on the pleadings.  Dkt. Nos. 10, 12.  For the reasons set forth

below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's

_____
[1] Plaintiff indicated at the hearing that his first name is spelled "Ishmael."  T. 75.

1

motion for judgment on the pleadings is granted.  The Commissioner's decision denying

Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.


## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1988, making him twenty-four years old at the alleged onset

date and twenty-six years old at the date of the ALJ's decision.  T. 204.[2]  Plaintiff

reported obtaining an Associate's degree in information technology and, at the time of

the hearing, was working part-time toward a Bachelor's degree in biology.  Id. at 77-78.

Plaintiff has past work as a customer service clerk, cab driver, fast food worker, and

truck driver.  Id. at 79-80.  Generally, Plaintiff alleges disability due to lumbar spine

impairments including a herniated disc at L4-L5, a compressed nerve at L5-S1, and

lumbar radiculopathy; neck/head pain; a bulging disc at the C6 level of the cervical

spine; a post-concussion status; chronic headaches; and anxiety.  Id. at 111-12.


### B.    Procedural History

Plaintiff applied for Disability Insurance Benefits on October 1, 2013, and for

Supplemental Security Income on October 17, 2013, alleging in both applications

disability beginning September 14, 2012.  T. 204-17.  Plaintiff's applications were

denied initially on December 16, 2013, after which he timely requested a hearing before

an Administrative Law Judge ("ALJ").  Id. at 7.  Plaintiff appeared at a hearing before

---

[2] [2] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

ALJ Gregory M. Hamel on February 10, 2015.  Id. at 73-110.  On April 23, 2015, the

ALJ issued a written decision finding Plaintiff was not disabled under the Social Security

Act.  Id. at 8-31. On September 20, 2016, the Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the final decision of the Commissioner.  Id. at 1.

Plaintiff commenced this action on November 6, 2016.  See Dkt. No. 1 ("Compl.").


### C.    The ALJ's Decision

First, the ALJ found that Plaintiff met the insured status requirements of the

Social Security Act through September 30, 2016.  T. 13.  Second, the ALJ determined

that Plaintiff has not engaged in substantial gainful activity since September 14, 2012,

the alleged onset date.  Id.  Third, the ALJ found that Plaintiff's alleged impairments

including degenerative disc disease ("DDD") of the lumbar spine with radiculopathy,

cervical strain, migraine headaches, and an anxiety disorder are severe.  Id.  Fourth, the

ALJ concluded that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals one of the listed impairments in 20 C.F.R. § 404,

Subpart P, App. 1 (the "Listings").  Id. at 14-15.  Specifically, the ALJ considered listings

1.04 (disorders of the spine) and 12.06 (anxiety-related disorders).  Id.  Fifth, the ALJ

found that Plaintiff has the residual functional capacity ("RFC") to perform light work as

defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except

> the claimant can only occasionally climb stairs,
> balance, stoop, knee[l], crouch, and crawl; but never
> climb ladders or similar devices or work at hazardous
> environments such as at heights or around dangerous
> machinery (which does not include driving or normal
> household activities).  Furthermore, the claimant
> cannot perform tasks that require more than occasional

3

> public contact; and he cannot focus on tasks that are
> more than routine and repetitive in nature.

Id. at 16.  Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work.

Id. at 25.  Seventh, the ALJ determined that there are jobs that exist in significant

concluded that Plaintiff is not disabled.


### D.    Arguments

### 1.    Plaintiff's Motion for Judgment on the Pleadings

Generally, in support of his motion for judgment on the pleadings, Plaintiff argues

that the ALJ committed reversible error by failing to consider the medical source

statement of orthopedic surgeon Richard Byrne, M.D.  Dkt. No. 10 at 3-6 (Pl.'s Mem. of

Law).  Plaintiff argues that the RFC should have contained a reaching limitation.  Id.at 4.

Further, plaintiff contends that the ALJ failed to address Dr. Byrne's opinion in the

decision, specifically his opined limitations regarding no repetitive neck motions; no

repetitive bending, stooping, or reaching activity; and only occasional (up to four times

hourly) pushing, pulling, or lifting objects no more than five to ten pounds.  Id. at 4.

Plaintiff also argues that Dr. Byrne's opinion is supported by lumbar and cervical spine

reports.  Id.  He further contends that the opinion is supported by consultative examiner

Elke Lorensen, M.D., who assessed moderate restrictions for reaching and "turning the

head to the right."  Id.  Plaintiff also notes that a cervical spine impairment has been

documented in independent medical examiner Paul Kerschner, D.C.'s examination

findings, neurologist Hassan Shukri, M.D's notes reporting cervical radicular symptom,

and Thomas Masten, M.D.'s[3] diagnosis of cervical radicular pain.  Id.

---

[3]      In his decision, the ALJ refers to Dr. Masten as "Matson."  T. 21, 23-24.

4

Plaintiff argues that the ALJ's failure to address Dr. Byrne's opinion is not harmless error because consideration of this opinion was required for an accurate assessment of Plaintiff's RFC and because significant limitations in reaching or handling may eliminate a large number of occupations.  Dkt. No. 10 at 4-5.  Plaintiff also argues that the ALJ discounted the reaching limitations assessed by Dr. Lorensen without the benefit of analyzing the similar limitations assigned by Dr. Byrne.  Id. at 5.  Plaintiff argues that a reaching limitation is appropriate and would reduce the number of jobs available for him to perform at Step Five because the jobs cited by the ALJ require either frequent or constant reaching.  Id.

### 2.    Defendant's Motion for Judgment on the Pleadings

Defendant argues that the ALJ appropriately considered Dr. Byrne's opinion. Dkt. No. 12 at 6-9.  Specifically, Defendant argues that the ALJ expressly considered, addressed, and appropriately weighed Dr. Byrne's opinion in light of the record as a whole in accordance with the regulations.  Id. at 6-7.  Defendant notes that the ALJ (1) cited Dr. Byrne's discussion of the September 14, 2012 motor vehicle accident that Plaintiff alleges gave rise to his impairments, (2) detailed the subjective statements Plaintiff made to Dr. Byrne during this examination, and (3) noted Dr. Byrne's examination findings and opinion that Plaintiff could work.  Id. at 7.

Defendant argues that Dr. Byrne's opinion does not support Plaintiff's allegations because Dr. Byrne opined that Plaintiff would be able to lift up to twenty-five pounds if radiographic studies showed no bony abnormality.  Dkt. No. 12 at 7-8.  Defendant also argues that Plaintiff fails to establish that Dr. Byrne's opinions as to Plaintiff's ability to

push, pull, and reach satisfy the regulations' durational requirement, noting that Dr.

Byrne specifically qualified his opinion by stating that any disability was temporary and

partial and that Plaintiff could perform full-time light duty work at the time of the opinion.

Id. at 8.  Defendant argues that Dr. Byrne's opinion was not meant as a longitudinal

assessment, rather an initial assessment occurring just after Plaintiff's September 2012

motor vehicle accident, and that a longitudinal review of the record shows that Plaintiff's

condition improved.  Id.

Defendant also argues that any error in the ALJ's assessment of Dr. Byrne's

opinion would be harmless because Plaintiff would still be found not disabled under the

regulations even if Dr. Byrne's assessment supported a lifting limitation of five to ten

pounds as it would be consistent with sedentary work.  Dkt. No. 12 at 8-9.  Next,

Defendant argues that substantial evidence supports the ALJ's RFC finding that Plaintiff

had no reaching limitation.  Id. at 9-16.  Specifically, Defendant argues that, when

assessing Plaintiff's RFC, the ALJ considered all of the medical and non-medical

evidence of record, including Plaintiff's own subjective statements.  Id. at 9.  Defendant

notes that the record consistently shows normal physical examinations indicating an

ability to reach and argues that the ALJ appropriately found that Plaintiff did not have a

reaching limitation based on the medical evidence.  Id. at 10-12.  Defendant also argues

that the ALJ relied on Dr. Nelson's opinion that Plaintiff had no restrictions.  Id. at 11.

Defendant additionally argues that Plaintiff's argument that the ALJ committed an

error because "substantial evidence exists within the file supporting the reaching

limitations" is unavailing and inapposite to the appropriate legal standard.  Dkt. No. 12 at

11.  Defendant argues that, under the substantial evidence standard, if the Court finds

6

that there is substantial evidence supporting the Commissioner's determination, the decision must be upheld even if there is also substantial evidence for the Plaintiff's position.  Id.

Defendant argues that the evidence on which Plaintiff relies does not support his allegations, including Dr. Byrne's November 29, 2012 assessment, Dr. Kerschner's September 13, 2013 assessment, Dr. Shukri's September 17, 2013 neurological examination, and Dr. Lorensen's November 2013 consultative examination.  Dkt. No. 12 at 12-13.  Defendant argues that (1) Dr. Kerschner is a chiropractor and, therefore, is not an acceptable medical source under the regulations, (2) Dr. Kerschner did not opine on Plaintiff's ability to reach, (3) Dr. Kerschner stated that Plaintiff did not have a recent enough evaluation for him to make a full assessment, and (4) Dr. Kerschner's examination of Plaintiff's upper extremities was normal.  Id. at 13.  Regarding Dr. Shukri's opinion, Defendant argues that Dr. Shukri did not assess Plaintiff's upper extremity range of motion or his ability to reach at the September 13, 2013 evaluation on which Plaintiff relies.  Id.

Defendant also argues that the ALJ expressly considered Dr. Lorensen's opinion and rejected the moderate reaching limitations based on the physical examination and Plaintiff's own inconsistent statements.  Dkt. No. 12 at 13.  Defendant notes that the examination revealed primarily normal findings in Plaintiff's cervical spine and upper extremities.  Id.  Defendant argues that these findings do not support a reaching restriction and points out that Dr. Lorensen noted that Plaintiff was intentionally giving poor effort during the examination.  Id. at 13-14.  Defendant additionally argues that courts have consistently found that a finding of moderate limitation is consistent with an

7

RFC to perform light work and indicates that Dr. Lorensen's opinion regarding moderate limitations in reaching is therefore consistent with the ALJ's RFC finding. Id. at 14.

Defendant also contends that Plaintiff's reliance on the MRI studies is unavailing because the MRIs do not support a reaching limitation. Dkt. No. 12 at 14. Defendant notes that Dr. Ferraraccio reviewed the earliest MRI, taken on May 16, 2013, and found that Plaintiff could perform light work. Id. Defendant notes that the more recent MRI, taken July 7, 2014, showed improvement, and that Plaintiff told Dr. Ferraraccio during the October 2013 evaluation that his cervical complaints had resolved. Id. Finally, Defendant argues that the ALJ properly relied on multiple inconsistencies in Plaintiff's statements when assessing his alleged limitations. Id. at 15-16.

## II.    LEGAL STANDARDS

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from

[the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth

step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

### III.    ANALYSIS

### A.    Dr. Byrne's Opinion

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it

is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) and 20 C.F.R. § 404.1527(c)(2)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." Blinkovitch v. Comm'r of Soc. Sec., 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017)) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). The ALJ is responsible for reviewing all the evidence before him or her, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, 13-CV-

11

1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."), accord Petell v. Comm'r of Soc. Sec., 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014).

On November 29, 2012, orthopedic surgeon Dr. Byrne performed an independent orthopedic evaluation of Plaintiff related to his worker's compensation claim. T. 286-90. Plaintiff reported he had had no neck or back pain in the emergency room following his motor vehicle accident, but had severe neck and back pain and stiffness the next morning. Id. at 286-87. He further reported developing pain down his right leg to the calf through his right buttock after the accident and using a back brace for comfort. Id. at 287. On examination, plaintiff had limited lumbar spine range of motion, lumbar muscular tenderness, and limited cervical spine range of motion. Id. at 288. Plaintiff also complained of ongoing neck discomfort. Id. Dr. Byrne diagnosed lumbosacral strain, a cervical strain, and abrasions/contusions. Id. Dr. Byrne recommended periodic observational follow-up with Plaintiff's treating physician at four-to-six week intervals for three months, cervical spine and lumbar spine x-rays, pain medication if required, and physical therapy (including active physical therapy) two-to-three times weekly for three-to-six weeks, soft-tissue immobilization, heat and/or ice treatments, and/or ultrasound. Id. at 289. As to Plaintiff's degree of disability, Dr. Byrne noted he felt uncomfortable rendering such an opinion because x-rays had not been done and categorized Plaintiff's degree of disability as a temporary marked (75%) partial disability of the neck and back. Id. Dr. Bryne noted that, if x-rays were obtained and failed to show any bony abnormality, this rating could be converted to a temporary

moderate (50%) partial disability of the neck and back with a twenty-five-pound lifting limitation.  Id.  Dr. Byrne opined that

> the claimant could be employed full time in a light-duty capacity.  He should perform no repetitive neck motions and no repetitive bending, stooping or reaching activity.  He could be called upon on an occasional basis (up to 4 times hourly) to push pull or lift objects weighing not more than 5-10 pounds at this time.

Id.

Plaintiff argues that the ALJ committed reversible error by failing to consider Dr. Bryne's medical source statement.  Dkt. No. 10, at 3-6 (Pl.'s Mem. of Law).  However, the Court finds this argument unpersuasive for the following reasons.  As argued by Defendant, the ALJ specifically mentioned Dr. Byrne's November 29, 2012 evaluation, noting Plaintiff's inconsistent statements about work restrictions following his motor vehicle accident and his consciousness following that accident.  T. 18-19.  Although the ALJ did not specifically address Dr. Byrne's opinion in his further discussion of the opinion evidence or explicitly assign it level of weight, the Court finds this to be harmless error.  Id. at 24.  Failure to consider or weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the outcome.  See Cottrell v. Colvin, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)); Camarata v. Colvin, 14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome); Ryan v. Astrue, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the

treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose).[4]

Dr. Byrne's opinion, even if it were afforded significant weight, would not change the outcome here because the ALJ's RFC is consistent with Dr. Bryne's opinion. The ALJ found that Plaintiff could perform a modified range of light work, and Dr. Byrne opined that Plaintiff could be employed full time in a light-duty capacity. T. 16, 289. The ALJ's RFC limits Plaintiff to occasional stooping, kneeling, crouching, and crawling. Id. at 16. These limitations are consistent with Dr. Byrne's opinion that Plaintiff should perform no repetitive bending or stooping. Id. at 289. Although Dr. Byrne also opined that Plaintiff should perform no repetitive neck motions and no repetitive reaching activity, the ALJ adequately addressed reaching limitations when he rejected the reaching limitations opined by consultative examiner Dr. Lorensen and found that they were not supported, as discussed further infra. Id. at 24. The same rationale applied to Dr. Lorensen's opined reaching limitations would also be applicable to explain the ALJ's failure to adopt Dr. Byrne's reaching limitations. Therefore, although the ALJ did not explicitly state the weight he gave to Dr. Byrne's opinion or explicit reasons for rejecting it, his implicit rejection of that opinion – and his rationale for such rejection – is clear from the decision. It is important to note that Dr. Byrne's opinion also indicates that he

---

[4] In Gemmell v. Comm'r of Soc. Sec., 16-CV-1014 (CFH), 2017 WL 3328237, at *5-8 (N.D.N.Y. Aug. 2, 2017), this Court distinguished Cottrell, 206 F. Supp. 3d at 810, Camarata, 2015 WL 4598811, at *16, and Ryan, 650 F. Supp. 2d at 217. In Gemmell, the Court noted that the ALJ provided no indication as to how a treating physician's opinion was interpreted and the decision did not at all mention the doctor's opinion on a relevant point nor provide "any suggestion of how she may have interpreted that opinion[.]" Gemmell, 2017 WL 3328237, at *7. This Court has reviewed the ruling in Gemmell and concludes that it is not analogous to this case and does not require a different result. The ALJ's decision here does mention Dr. Byrne's November 29, 2012 evaluation, and also notes inconsistent statements by Plaintiff at that evaluation. T. 18-19. Thus, the ALJ's assessment and consideration of Dr. Bryne's opinion can be determined from his opinion, despite that he did not accord the opinion a specific weight.

14

characterized plaintiff's degree of disability as temporary, which is further noted in Dr.

Byrne's work capacity statement indicating that Plaintiff could perform occasional

pushing, pulling, or lifting of objects not more than five to ten pounds "*at this time*." Id.

at 289.

The context of Dr. Byrne's assessment is also relevant to the ALJ's consideration

of this opinion. Although the ALJ did not explicitly address the nature of Dr. Byrne's

opinion, the ALJ noted that Dr. Byrne was evaluating Plaintiff for a worker's

compensation claim on November 29, 2012. T. 18. The ALJ also noted inconsistencies

in Plaintiff's reports to Dr. Byrne on that date, including (1) reporting a loss of

consciousness during his September 2012 motor vehicle accident, which the ALJ noted

contrasted with Plaintiff's report to emergency room physician Dr. Nelson wherein he

stated that he remembered the entire accident, as well as his report to Dr. Khara that he

never lost consciousness; and (2) Plaintiff's report to Dr. Byrne that he could not obtain

a work release from emergency room doctors in October 2012, but the record showed

that Dr. Nelson gave no restrictions. Id. at 18-19.

The ALJ's decision indicates that he considered Dr. Byrne's opinion, along with

the other medical opinions of record, when assessing the RFC. T. 17-23. A review of

the ALJ's decision shows that he considered the opinions of record, including Dr.

Byrne's opinion, and that an explicit assignment of weight regarding Dr. Byrne's opinion

would not change the outcome of Plaintiff's disability claim. Notably, the ALJ twice

noted that various doctors, including those who examined Plaintiff for his workers'

compensation claim like  Dr. Byrne, assigned Plaintiff a variety of disability ratings

(ranging from 25 to 75 percent), each of which was said to be temporary. Id. at 24, 25.

The ALJ also indicated that he was "persuaded by the fact that following multiple evaluations for his worker's compensation claim, there is no evidence the claimant sought treatment for any of his complaints for several months between October 2013 and May 2014." Id. at 24.  In sum, it can be determined from the ALJ's decision as a whole that he properly considered Dr. Byrne's opinion; thus, the failure to assign a specific weight to this opinion is harmless error.  Remand is, therefore, not required on this basis.

## B.  RFC Determination

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

In assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  20 C.F.R. §§

16

404.1513; see also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012)

(summary order) ("The report of a State agency medical consultant constitutes expert

opinion evidence which can be given weight if supported by medical evidence in the

record.").  The RFC determination "must be set forth with sufficient specificity to enable

[the Court] to decide whether the determination is supported by substantial evidence."

Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

In conjunction with his argument regarding Dr. Byrne's opinion – which included

an opined limitation for no repetitive reaching activity – Plaintiff appears to argue that

the ALJ's RFC determination is not supported by substantial evidence because it does

not contain a reaching limitation.  Dkt. No. 10, at 3-6.  Plaintiff argues that this limitation

is also supported by consultative examiner Dr. Lorensen's opinion insofar as she

assessed moderate restrictions with reaching.  Id. at 4.  However, the Court finds this

argument unpersuasive.

As noted above, the ALJ specifically addressed the issue of reaching limitations

when considering Dr. Lorensen's opinion.  T. 24.  The ALJ explicitly indicated that he

gave strong weight to this opinion, except for the conclusion regarding reaching

limitations, "because when the claimant was directly confronted with his inconsistent

reports of neck pain after having earlier denied them to Dr. Ferraraccio, the claimant

admitted he had no lingering problems with his neck or shoulders."  Id.  The ALJ also

noted that Dr. Lorensen found that Plaintiff was intentionally giving poor effort during the

consultative examination.  Id. The ALJ's RFC analysis indicates an explicit

consideration of any reaching limitation and provides an adequate explanation for why

such limitation was rejected in reaching the final RFC.  Id.  Further, "[t]here is no

requirement that the ALJ accept every limitation in the opinion of a consultative examiner." Kitka v. Comm'r of Soc. Sec., 15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) (citing Pellam v. Astrue, 508 F.App'x 87, 89 (2d Cir. 2013) (summary order).

Additionally, the RFC is supported by substantial evidence because the ALJ properly considered and relied on the numerous medical opinions of record to reach his finding. For example, the ALJ afforded great weight to the reports of Plaintiff's primary care provider and treating specialists at Upstate University Health System including Drs. Lavelle, Masten, and Shukri. T. 24. The ALJ also afforded strong weight to Dr. Lorensen's consultative examination, except for the conclusion regarding reaching limitations, discussed above. Id. The ALJ further afforded significant weight to the Dr. Ferraraccio's assessments which consistently indicated that Plaintiff could perform light work. Id. The ALJ's analysis shows that he properly considered the evidence of record, including the various opinions, and made a determination consistent with the evidence as a whole. Thus, the determination is based on substantial evidence.


## IV. CONCLUSION

**WHEREFORE**, for the above reasons, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: February 22, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge